IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY JOSEPH LUZAR,

                Plaintiff,

v.                                                                              OPINION and ORDER

ANDREW M. SAUL,                                                  19-cv-1018-jdp
    Commissioner of the Social Security Administration,

                Defendant.

---

Plaintiff Jeremy Joseph Luzar seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Luzar not disabled within the meaning of the Social Security Act. Luzar contends that the administrative law judge (ALJ), Trina Mengesha-Brown, erred by failing to: (1) adequately consider the opinion of Luzar's treating physician; (2) adequately consider Luzar's subjective complaints of pain; (3) support the finding that Luzar was capable of full-time, sedentary work; (4) obtain a reliable basis for the vocational expert's opinion about the number of jobs available that Luzar can perform; and (5) resolve a conflict between the vocational expert's opinion and the *Dictionary of Occupational Titles*.

The court is not persuaded that the ALJ erred, so it will affirm the commissioner's decision. The oral argument scheduled for September 10, 2020, is canceled.

ANALYSIS

Luzar seeks benefits for disability beginning in September 2014, when Luzar was 38 years old. R. 16.[1] In her January 2019 decision, the ALJ found that Luzar suffered from three severe impairments: (1) cervical degenerative disc disease; (2) lumbar degenerative disc disease; (3) and obesity. *Id.* In light of these impairments, the ALJ found that Luzar could perform sedentary work with other restrictions, and that he would be off task ten percent of the workday. R. 20. Relying on the testimony of a vocational expert, the ALJ found that Luzar could not perform any of his past jobs, but he could perform other jobs that exist in significant numbers in the national economy, including a call out operator and surveillance systems monitor. R. 26.

The case is now before this court to determine whether the ALJ's decision applies the correct legal standards and is supported by "substantial evidence," *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), which means that the court looks to the administrative law record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency "is not high"; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

**A. Treating physician opinion**

Yash Pannu was Luzar's treating physician. He gave an opinion that Luzar could walk less than two blocks without rest or severe pain and could work less than one hour a day. R. 887–88. The ALJ gave Pannu's opinion "little weight" for two reasons: (1) it was inconsistent

---

[1] Record cites are to the administrative transcript, located at Dkt. 14.

with objective evidence, such as diagnostic testing; and (2) Pannu "appear[ed]" to rely "mostly" on Luzar's subjective complaints. R. 24.

Luzar objects to the ALJ's handling of Pannu's opinion on four grounds: (1) the ALJ didn't cite any evidence showing that Pannu relied on subjective complaints; (2) even if Pannu did rely on subjective complaints, he was entitled to do so; (3) Pannu's opinion was consistent with Luzar's September 2018 diagnosis for post-laminectomy syndrome; and (4) the ALJ failed to discuss the factors in 20 C.F.R. § 404.1527(c) for determining how much weight to give to the opinion of a treating physician.

Luzar is correct that the ALJ didn't cite statements from Pannu in which he admitted that he relied on Luzar's subjective complaints. But it was a logical inference for the ALJ to draw. Pannu didn't identify any objective evidence that supported his opinion, and Luzar doesn't dispute the commissioner's contention that the objective evidence available to Pannu showed unremarkable findings.

In support of his contention that Pannu was entitled to rely on subjective complaints, Luzar cites *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019), but that case involved a psychiatrist making a mental health assessment. As a general rule, an ALJ may discount a medical opinion if it rests on subjective complaints. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). *Mischler* suggests that there is an exception to the general rule when the purpose of the examination is to evaluate the patient's statements and when the medical provider's expertise encompasses that task. But Pannu wasn't conducting a mental health assessment of Luzar, so *Mischler* isn't instructive.

As for Luzar's diagnosis for post-laminectomy syndrome, that is simply post-surgery back pain. Luzar doesn't explain how the diagnosis supports Pannu's opinion, and the court

cannot discern the significance of the diagnosis. Luzar received the diagnosis *after* Pannu gave his opinion, so Pannu could not have relied on the diagnosis. And the medical record Luzar cites doesn't indicate the basis for the diagnosis, R. 1004–05, so it may be based on nothing more than a subjective complaint. Regardless, a finding that Luzar suffered from pain says nothing about the extent of the pain or how debilitating it is, so it doesn't provide a basis for showing that the ALJ erred by not giving more weight to Pannu's opinion. Luzar identifies no other medical evidence that supports Pannu's opinion.

Finally, Luzar criticizes the ALJ for not discussing each of the factors listed in 20 C.F.R. § 404.1527(c) for determining how much weight to give to a medical opinion. But a failure to explicitly discuss each regulatory factor is typically not a stand-alone basis for remand. *See, e.g., Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008); *Nelson v. Saul*, No. 19-cv-79-jdp, 2019 WL 6522402, at *2 (W.D. Wis. Dec. 4, 2019). And Luzar doesn't explain how any of the factors not discussed would undermine the ALJ's decision. So Luzar's challenge to the ALJ's rejection of Pannu's opinion fails.

**B. Subjective complaints of pain**

The ALJ acknowledged the subjective complaints that Luzar made at the administrative hearing:

- He is still in a lot of pain, which runs down the left side of his neck and shoulder to his hands.

- He has difficulty lifting his arms to comb his hair.

- He has difficulty sleeping and writing.

- His whole hand is numb.

- He has lower back pain that affects his ability to bend and walk "on some days."

R. 21. The ALJ assumed, as do the parties, that Luzar would meet the requirements for disability if the ALJ accepted his testimony. And the ALJ found that Luzar's impairments "could be reasonably expected to cause the alleged symptoms." *Id.* But the ALJ also found that Luzar's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Specifically, she said that Luzar's "diagnostic tests, physical examinations, and treatment history" support a finding that he can perform sedentary work. *Id.*

In his opening brief, Luzar criticizes the ALJ's credibility determination on the ground that "[n]owhere in the ALJ's decision was there anything indicating an assessment of Luzar's subjective complaints of pain." Dkt. 17, at 30. But this isn't a fair criticism. The ALJ identified three bases for her determination. And she went into greater detail about her reasons in other sections of the decision. Luzar's objection appears to be that the ALJ didn't explain her reasoning all in one place, but that isn't required. District courts must "read the ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), and "not discount [the ALJ's reasoning] simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

In his reply brief, Luzar raises other objections to the ALJ's credibility determination. But Luzar forfeited those objections by failing to raise them in his opening brief. *See Brown v. Colvin,* 661 F. App'x 894, 895 (7th Cir. 2016). So the court will not remand on this ground.

**C. RFC assessment**

When assessing Luzar's physical impairments, the ALJ considered the opinions of three medical experts: (1) Yash Pannu, who was discussed above; (2) Bernard Stevens, a consulting physician who said that Luzar could perform a full range of light work; and (3) Scott Law, a physical therapist who also said that Luzar was capable of performing light work. The ALJ gave "little weight" to Stevens and Law because Luzar "has had two neck surgeries including fusions and decompressions and exams continued to show decreased sensation in the left C6 and C7 distributions, decreased cervical range of motion, and normal reflexes and strength." R. 24. Based on this, the ALJ found that Luzar could perform sedentary rather than light work.

Luzar objects on the ground that the surgeries post-dated the expert opinions, and the ALJ wasn't qualified to assess the importance of the two surgeries or determine that Luzar could perform sedentary work. ALJs may not "play doctor" and interpret medical records that require medical expertise to understand. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). But Luzar doesn't identify any records cited by the ALJ that required medical expertise to read. In any event, the rule about playing doctor is generally applied when the ALJ rejects a medical opinion in favor of more expansive view of the claimant's abilities. *See, e.g., Gibbons v. Saul*, 801 F. App'x 411, 417 (7th Cir. 2020); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016). In this case, the ALJ relied on the additional medical records to impose *more* restrictions on Luzar's ability to work, so there was no prejudice to Luzar.

Luzar must do more than point to evidence that post-dates the expert opinions. He must explain how the evidence could support greater restrictions than what the ALJ found. *See Loveless v. Colvin,* 810 F.3d 502, 508 (7th Cir. 2016); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014). In this case, Luzar doesn't cite any evidence suggesting that the surgeries

6

prevent him from doing sedentary work. So the court declines to remand the case on this ground.

### D. Reliability of vocational expert's job numbers

The vocational expert, Bernard Preston, testified that there were more than 16,000 call out operator positions and more than 25,000 surveillance systems monitor positions available nationwide. R. 63. Luzar contends that the expert failed to show that his estimates were "the product of a reliable method," as required by *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

When Luzar's counsel asked where Preston's estimates came from, Preston said, "U.S. Publishing Employment Quarterly," R. 67, which the parties agree is *Occupational Employment Quarterly* (OEQ). After Preston explained that the OEQ numbers came from the Bureau of Labor Statistics, among other sources, counsel objected that Preston hadn't demonstrated that the estimates were calculated using a reliable method, but he didn't identify any specific problems with OEQ's numbers. R. 68–69. He repeats the objection in this court.

Counsel for Luzar has made the same argument in at least two other cases in this court, and the court has rejected the argument both times. *See Coyier v. Saul*, No. 19-cv-393-bbc (W.D. Apr. 2, 2020); *Arms v. Berryhill*, No. 18-cv-476-jdp, 2019 WL 1352809, at *6 (W.D. Wis. Mar. 26, 2019). The court observed that OEQ is "a source on which VEs customarily rely," *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009), and that the plaintiff failed to identify any specific problems with the reliability of the numbers in OEQ or any additional questions that the ALJ should have asked the expert.

Although both cases were decided before Luzar filed his opening brief, he failed to acknowledge either of them until they were cited by the commissioner in his opposition brief.

Even in his reply brief, Luzar doesn't discuss *Arms*. He mentions *Coyier* only to say that the case is on appeal, but he doesn't explain why he believes it was wrongly decided. So the court will follow *Arms* and *Coyier* and conclude that the ALJ adequately established that the vocation expert provided job estimates using a reliable method.

E. **Alleged conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles***

Social Security Ruling ("SSR") 00-4p imposes a limited obligation on the ALJ to uncover and resolve any conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*. Relevant to this case, the ALJ must ask the vocational expert whether there is a conflict. If the expert identifies a conflict, the ALJ must obtain a reasonable explanation for the conflict. But if the expert denies any conflict, the burden falls on the claimant to probe further unless the conflict is apparent. *Surprise v. Saul*, 968 F.3d 658 (7th Cir. 2020).

Luzar concedes that the ALJ satisfied the first requirement by directing Preston to identify any conflicts between his testimony and the *Dictionary*. R. 61. The expert didn't identify any conflicts, and Luzar's counsel didn't raise an objection with the ALJ, so the question is whether any conflict was apparent enough that the ALJ should have uncovered the conflict on her own.

Luzar says that there was a conflict between Preston's testimony and the *Dictionary* because Preston considered restrictions that aren't included in the *Dictionary*. Specifically, Preston's testimony was based on the ALJ's findings that Luzar could not twist his head at the neck repetitively; could not flex or extend the neck forward or backwards repetitively; could not perform jobs requiring manipulation of small objects on the left; and must alternate

sit/stand by standing for ten minutes after every hour of sitting. R. 62–63. Luzar says that the job descriptions in the *Dictionary* for call out operator and surveillance systems monitor do not address the above restrictions, so there is an apparent conflict.

This is another issue that Luzar's counsel has raised before unsuccessfully. In *Frye v. Saul*, No. 18-cv-550-wmc, 2020 WL 255815, at *5–6 (W.D. Wis. Jan. 17, 2020), the court rejected a similar argument, holding that there is no apparent conflict when the expert's testimony supplements the information in the *Dictionary*. The court relied on two appellate decisions. *Brown v. Colvin*, 845 F. 3d 247, 254 (7th Cir. 2016) ("Brown concedes that [the VE's testimony about sit-stand options and allowable time off task] merely supplemented (and did not conflict with) the *Dictionary of Occupational Titles* (DOT), which means that she forfeited these arguments by failing to object to the testimony during the administrative hearing."); *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008) (because DOT does not address the subject of sit-stand options, there was no apparent conflict between VE's testimony and the DOT).

Again, Luzar didn't acknowledge *Frye* or any of the other contrary authority in his opening brief. And Luzar's only reference to *Frye* in his reply brief is to note that the case is on appeal, though since Luzar filed that brief, the appeal in *Frye* was dismissed. No. 20-1230, 2020 WL 4592926 (7th Cir. Aug. 4, 2020).

Counsel has a duty under Wisconsin Supreme Court Rule 20:3.3 to disclose legal authority that is "directly adverse" to his position. Counsel clearly failed to follow that rule on two separate issues relevant to this appeal. And counsel has no excuse for failing to comply because the adverse authority includes *his* cases. So the only apparent reason for excluding the authority from counsel's brief is a hope that neither the commissioner nor the court would

9

catch the omission. Whatever the reason, it must stop. The court expects counsel to acknowledge when the court has already decided an issue against him. Of course, he is free to contend that the previous decision was wrongly decided, but he must address precedent head on rather than simply ignore it. If he fails to do so, the court will consider an appropriate sanction.

Although Luzar doesn't address the reasoning in *Frye*, he does offer a reason for reaching a different result. Specifically, he says that SSR 00-4p makes it clear that there is an apparent conflict when the vocational expert provides testimony that supplements the *Dictionary*. He cites the following section of the ruling:

> Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information
>
> Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:
>
> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

Luzar seizes on the phrase "Evidence from VEs or VSs can include information not listed in the DOT," and he contends that it means that SSR 00-4p is defining an apparent conflict as including any information that isn't in the *Dictionary*. But the cited passage isn't part of a list of "apparent conflicts." It is a list of possible *explanations* for perceived conflicts.

10

One of those explanations is that the *Dictionary* simply doesn't address the issue that the expert discussed. So SSR 00-4p confirms rather than contradicts the view in *Frye* that there is no apparent conflict between the *Dictionary* and testimony that addresses issues not included in the *Dictionary*.

## F. Conclusion

The ALJ's decision in this case is supported by substantial evidence, so the court will affirm the decision.

## ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED and the September 10, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered September 3, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge